EYVETTE HUTCHINSON,

        **Plaintiff,**

v.                              **Case No: 6:16-cv-360-Orl-28KRS**

SECRETARY, DEPARTMENT OF
VETERAN AFFAIRS AGENCY,

        **Defendant.**

_____

## ORDER

In this action brought under Title VII of the Civil Rights Act of 1964, Eyvette Hutchinson, an African-American female veteran, claims that Defendant Secretary, Department of Veteran Affairs Agency (the "VA") subjected her to race and gender discrimination by failing to promote her to a Personnel Security Specialist position in 2011. (Compl., Doc. 1). The VA now moves for summary judgment on all of Hutchinson's claims. (Doc. 27). Hutchinson has filed a Response in opposition to the VA's motion, (Doc. 28), and the VA has replied, (Doc. 33). For the reasons that follow, the VA's motion is granted.

## I.    Background

### A.    Hutchinson's Employment with the VA

Hutchinson's career with the VA began in 2008, when she obtained employment at the Orlando VA Medical Center (the "Center"). (Hutchinson Dep.,[1] Ex. B to Mot. Summ. J., at 41). The VA hired Hutchinson as a GS-5 Program Support Assistant for Mental Health and promoted her to a GS-6 Program Support Assistant for Mental Health Intensive Case

_____

[1] All citations to depositions in this case refer to the deposition page numbers. In all other circumstances, the citations are to the electronic record.

Management in June of 2009. (Id. at 41–42). In 2012 or 2013, Hutchinson was promoted again, this time to a GS-9 Program Specialist for Associated Health in Education. (Id. at 41–43). Hutchinson still works in that position, though now as a GS-11. (Id. at 42–44). This case, however, concerns Hutchinson's non-selection for a position she applied for in 2010.

### B. Personnel Security Specialist Vacancy Announcement

On November 29, 2010, the VA opened a vacancy announcement for a GS-9 Personnel Security Specialist position because the Center needed to provide "PIV"[2] security badges to approximately 2000 employees by March 31, 2013. (Skala Dep., Ex. D to Mot. Summ. J., at 7). Additionally, at that time, the Center was in the process of activating a new medical center, which would add approximately 1,300 new hires who would also require PIV security badges. (Id.; Greene Dep., Ex. E to Mot. Summ. J., at 27–28).

The vacancy announcement expressly required that each applicant possess "one year of specialized experience equivalent to at least GS-7 grade level" and defined specialized experience as "progressively responsible intelligence-related security work directly related to the position." (Ex. C to Mot. Summ. J., at 3). Applicants were also required to have "technical competence in automated information systems," including e-Quip—a system that collects sensitive data from a current or prospective VA employee and facilitates the process of security badging. (Id.; Skala Dep. at 8). To apply for the position, applicants were instructed to submit, inter alia, a resume and responses to four screening questions on or before December 10, 2010. (Ex. C to Mot. Summ. J., at 5).

---

[2] It is unclear from the record what "PIV" stands for. (See Skala Dep. at 6).

### C. Hutchinson's Application and the Selection Process

Hutchinson timely applied for the Personnel Security Specialist position on December 9, 2010. (See Ex. B-11 to Mot. Summ. J., at 2–20) (Hutchinson's "Application for Promotion or Reassignment")). After the vacancy announcement closed, Lisa Hargett, the Human Resources Staffing Specialist, determined that twenty-nine applicants, including Hutchinson, minimally qualified for the position. (See Skala Decl., Ex. G to Mot. Summ. J., ¶¶ 4, 7; see also Ex. B-2 to Mot. Summ. J., at 3). Hargett then referred all twenty-nine applicants to Tracy Skala, the Chief of Human Resources for the Center and the selecting official for the position. (Skala Decl., Ex. G to Mot. Summ. J., ¶¶ 1, 5). In her capacity as the selecting official, Skala reviewed and scored each applicant. (Id. ¶ 5). Skala's scores were then used to determine who among the qualified applicants would be interviewed by a hiring panel comprised of: (1) Joseph Greene, then Assistant Human Resources Officer at the Center; (2) Stephen Sabol, Jr., Chief of Police at the Center; and (3) Skala. (Id. ¶¶ 5–6).

On February 8, 2011, in the midst of the selection process, Hutchinson sent Davina Cook, the Human Resources Assistant of Staffing and Recruitment, an email inquiring about the status of her application. (See Ex. B-2 to Mot. Summ. J., at 3). Cook responded that same day, informing Hutchinson that "[Skala] [was] preparing to call the interviewee(s) for an interview." (Id. at 2–3). Hutchinson messaged Cook again on February 28, 2011, inquiring whether interviews were still pending. (Id.). Cook responded, "Yes-Management [has] all of the applications." (Id.).

Sometime thereafter, three of the twenty-nine minimally qualified applicants were invited for an interview. (Skala Decl., Ex. G to Mot. Summ. J., ¶ 7). Hutchinson was not among those interviewed. (Hutchinson Dep. at 79). At the conclusion of the three

interviews, the hiring panel selected Ross Holman, a white male, for the Personnel Security Specialist position. (Skala Decl., Ex. G to Mot. Summ. J., ¶ 8).

### D. Hutchinson's Notice of Non-selection

By email dated April 25, 2011, Cook notified Hutchinson that she had not been selected for the position of Personnel Security Specialist. (Ex. B-4 to Mot. Summ. J., at 5). Upon receipt of Cook's email, Hutchinson requested an explanation for why she was not selected for the position and the name of the selectee. (Id. at 4, 5). Cook forwarded Hutchinson's request to Hargett. (Id.). Hargett then sent Hutchinson an email stating the following:

> [Cook] sent me your email since I was the staffing specialist over this position. I am not the selecting official for this position, therefore I cannot answer your question on why you were not selected. I can tell you, the selecting official used a job criteria [sic] to review all applications to determine the best qualified applicant. The applicant that was selected was a veteran (external). If you would like more specific information regarding your non-selection, I can request that information from the selecting official.

(Id. at 4).

In response to Hutchinson's request for more specific information, Hargett told her that Holman had been selected for the position. (Id. at 3). In a separate email, Hargett explained:

> You were placed on a [Veterans Readjustment Act Certificate] and [a thirty percent or more disabled] [C]ertificate because you did not meet time-in-grade for a promotion. According to the information you submitted the highest grade you held was a GS-6. You qualified based upon your experience in the military. . . . [Holman] . . . had more experience and related education. As you know, our facility is vastly growing and there will be future job opportunities for you to apply for. It was a pleasure to review your application. Please let me know if there is anything else I can do for you.

(Id. at 2–3). Hutchinson expressed her disappointment regarding her non-selection and thanked Hargett for providing her with the requested information. (Id. at 2).

### E.    Hutchinson's EEO Complaint

Holman began working as a Personnel Security Specialist on June 19, 2011, (Skala Decl. ¶ 9), but Hutchinson did not meet him until approximately 2012 because they worked at different locations, (see Hutchinson Dep. at 76–77 (explaining that she did not meet Holman until she starting working as a Program Specialist for Associated Health in Education)). On August 30, 2011, Hutchinson learned, for the first time, that the VA had interviewed applicants for the Personnel Security Specialist position. This information was conveyed to Hutchinson by Guy Brown, who also applied for the position but received no interview. (Hutchinson Dep. at 72–73, 81, 82, 83; Ex. 4 to Doc. 28, at 10).

After receiving this information, Hutchinson's curiosity was piqued as to why she did not receive an interview. (Hutchinson Dep. at 78–80). Therefore, she submitted a Freedom of Information Act ("FOIA") request to gather more information concerning the interviewees and to obtain any certificates that contained her name. (Id.). From her FOIA request, Hutchinson learned that her name was placed on three separate Certificates for applicants qualifying for veterans' preference under: (1) the 30% or more Disabled Veterans Act, (2) the Veterans Readjustment Act, and (3) the Veterans Employment Opportunity Act. (Doc. 28 at 2; Exs. 8, 9 &10 to Doc. 28). In addition to learning that her name appeared on three certificates for veterans' preference, Hutchinson discovered that Holman was a white male who, in her view, possessed less work-related experience and education than she did. (Ex. B-6 to Mot. Summ. J.; Hutchinson Dep. at 79).

Consequently, Hutchinson contacted an EEO counselor with the Office of Resolution Management ("ORM") on September 20, 2011, and alleged that the VA had

subjected her to race and gender discrimination by failing to promote her. (See Hutchinson Dep. at 30–31; see also Ex. 9 to Doc. 28). The EEO counselor advised Hutchinson that her EEO contact was untimely and requested that Hutchinson submit a statement explaining why she failed to initiate contact with an EEO counselor within forty-five days of learning that Holman had been selected for the Personnel Security Specialist position. (Ex. 9 to Doc. 28; Ex. B-6 to Mot. Summ. J.). On September 23, 2011, Hutchinson provided the EEO counselor with a written response, explaining that while she learned of Holman's selection for the position in April 2011, she did not know of facts supporting a claim for discrimination until August 30, 2011, when "[she] learned that [Holman] ha[d] less work related experience and less education." (Ex. B-6 to Mot. Summ. J.).

Shortly after receiving Hutchinson's statement, the ORM notified Hutchinson of her right to file a formal complaint of discrimination. (Doc. 28 at 4). Hutchinson filed a formal Complaint of Employment Discrimination on October 17, 2011, asserting that the VA had discriminated against her on the basis of her race and gender. (Ex. B-7 to Mot. Summ. J.). Once the ORM completed its investigation, the VA issued a Final Agency Decision dismissing Hutchinson's Complaint of Employment Discrimination, concluding that her claims were barred pursuant to 29 C.F.R. § 1614.107(a). (Doc. 27 at 8; Doc. 28 at 4). Hutchinson appealed the dismissal to the EEOC's Office of Federal Operations. (Doc. 27 at 8; Doc. 28 at 4). The Office of Federal Operations affirmed the VA's administrative dismissal on December 11, 2015, and informed Hutchinson of her right to file a civil complaint in federal court within ninety days of receiving its decision. (Doc. 27 at 8; Doc. 28 at 4).

### F. The Instant Action

Hutchinson filed this lawsuit on March 1, 2016. In her one-count complaint,

Hutchinson claims that the VA discriminated against her on the basis of her race and gender by failing to select her for the Personnel Security Specialist position. (Compl. ¶¶ 27–32). The VA now seeks summary judgment in its favor, arguing that Hutchinson failed to exhaust her administrative remedies. (Doc. 27). Alternatively, the VA argues that Hutchinson's claims fail on the merits. (Id.).

## II.    Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the

evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52); see also Laroche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. Al Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

## III. Discussion

### A. Exhaustion of Administrative Remedies

Prior to bringing a claim under Title VII, an aggrieved federal employee must pursue and exhaust her administrative remedies. See Grier v. Sec'y of Army, 799 F.2d 721, 724 (11th Cir. 1986) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 829–32 (1976)). As part of the exhaustion requirement, the employee must initiate contact with an EEO counselor within 45 days of "the matter alleged to be discriminatory, or in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to do so is generally grounds for dismissal. See Brown v. Snow, 440 F.3d 1259, 1264–65 (11th Cir. 2006) (affirming the district court's determination that the defendant failed to establish that the plaintiff did not initiate contact within the 45-day charging period). "However, the 45-day time limit is not jurisdictional; rather, it functions like a statute of limitations, and, 'like a statute of limitations, [it] is subject to . . . equitable tolling." Ramirez v. Sec'y, U.S. Dep't of Transp., 686 F.3d 1239, 1243 (11th Cir. 2012) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).

The Eleventh Circuit instructs that "[u]nder equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that [he] was discriminated against." Carter v. West Publ'g Co., 225 F.3d 1258, 1265 (11th Cir. 2000). Stated another way, "a limitations period does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1025 (11th Cir. 1994) (citations omitted). "It is not necessary for a plaintiff to know all the facts that support his claim in order to file a claim[,]" but "mere suspicion" of discrimination is insufficient to trigger the start of the limitations period. See id. at 1025, 1026.[3]

The VA argues that the 45-day period began to run on Hutchinson's claims no later than April 26, 2011, when she learned that Holman had been selected for the Personnel Security Specialist position. (Doc. 27 at 14). At that point, the VA argues, Hutchinson knew of sufficient facts to support a claim for gender discrimination because she "was clearly on notice, or should have at least reasonably suspected, that [Holman] . . . was a male." (Id.). Because Hutchinson did not initiate contact with an EEO counselor "until September 20, 2011, well-beyond 45 days after she learned of the alleged discriminatory action," the VA argues that Hutchinson's claims[4] are time-barred and that it is entitled to summary judgment. (Id. at 14–15). The Court disagrees.

---

[3] The Court notes that equitable tolling has been applied in numerous cases where an employee believed he or she was terminated for legitimate business reasons only to find out after the statutory time has run that his or her employer hired a younger employee as a replacement. See, e.g., Sturniolo, 15 F.3d at 1023; Jones v. Dillard's, Inc., 331 F.3d 1259 (11th Cir. 2003); Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876 (5th Cir. 1991).

[4] Even if the Court were willing to accept the VA's argument that Hutchinson knew of Holman's gender on April 26, 2011—which it does not for reasons discussed below—

Upon examination of the record, the Court is unable to conclude that Hutchinson knew or should have known of facts to support a charge of race or gender discrimination on April 26, 2011. While it is undisputed that Hutchinson learned of Holman's selection for the position on that date, there is no indication that she even suspected that she was a victim of discrimination. In fact, a reading of the email chain between Hutchinson and Hargett suggests that Hutchinson believed the VA's proffered reasons for selecting Holman instead of her. (See Ex. B-4 to Hutchinson Dep. at 2–3).

Furthermore, Hutchinson attests that she did not discover that Holman was a white male, or that he had less experience and education than she did until August 30, 2011. (See Exs. B-6 to Mot. Summ. J.; Ex. B-7 to Mot. Summ. J. at 2; see also Hutchinson Dep. at 79). The VA has provided no evidence to rebut Hutchinson's assertions. Therefore, when viewed in light most favorable to Hutchinson, the record supports Hutchinson's assertion that she timely contacted an EEO counselor within 45 days of obtaining sufficient facts to support a prima facie case of race and gender discrimination. Accordingly, the Court will not grant summary judgment in favor of the VA on this basis.

B.   **Claims of Disparate Treatment**

Title VII provides that all "personnel actions affecting" employees "in executive agencies as defined" in 5 U.S.C. § 105 "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The focus of a disparate treatment claims is to determine whether unlawful "animus motivate[d] a challenged employment decision." See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079,

---

the VA wholly fails to explain how this fact would bar Hutchinson's claim for race discrimination.

1086 (11th Cir. 2004) (quoting Damon v. Fleming Supermkts. of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)). The existence of such animus is an issue of fact that the employee may prove through direct evidence or circumstantial evidence. See Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).

Where, as here, a plaintiff relies on circumstantial evidence to prove a claim for disparate treatment, a court employs the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Specifically, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected despite those qualifications; and (4) an equally or less-qualified employee who is not a member of the plaintiff's class received the promotion. Wilson, 376 F.3d at 1089.

If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The defendant may rebut that presumption of discrimination by clearly setting forth, "through the introduction of admissible evidence," the non-discriminatory reasons for the challenged employment decision. See Burdine, 450 U.S. at 255–56; see also Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994) (noting that the defendant's burden is one of production—not proof); Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983) (noting that "the defendant's burden of rebuttal is exceedingly light").

When a defendant meets its "burden of production, the presumption of discrimination is eliminated," Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005), and the plaintiff must "come forward with sufficient evidence to permit a

reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination," Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005).

### 1. Prima Facie Case

Hutchinson has established a prima face case of race and gender discrimination by demonstrating that: (1) she is an African-American female; (2) she applied for the Personnel Security Specialist position; (3) she was rejected despite her qualifications; and (4) an equally or less-qualified employee who is not a member of her class received the position. (See EEO Hearing Tr.[5] Part I, Ex. A to Mot. Summ. J., at 5, 7–8, 12). The VA concedes as much in its motion. (See Doc. 27 at 17). Therefore, a presumption of discrimination arises, and the burden shifts to the VA to articulate a legitimate non-discriminatory reason for its decision to select Holman for the position over Hutchinson.

### 2. Non-discriminatory, Legitimate Reasons

Seeking to rebut the presumption of discrimination, the VA offers three reasons for its decision to select Holman rather than Hutchinson. First, the VA asserts that Holman's relevant work experience in personnel security was current, while Hutchinson's was not. (Skala Dep. at 18). At the time of his application for the position, Holman was actively performing personnel security clearance work as an Installation Career Security Clearance Program Manager for the military. (See Ex. H to Mot. Summ. J., at 2–3; Skala Dep. at 9, 16, 18; Greene Dep. at 5). Hutchinson, on the other hand, was working as a Program Support Assistant, performing administrative and office management support, which did

---

[5] The EEO Hearing transcript is divided into two parts. Part I begins on the fifth page of the electronic record and ends on page ten. Part II begins on page eleven of the electronic record. Citations are to the pages contained in the EEO transcript.

not relate to personnel security. (See Ex. B-11 to Mot. Summ. J., at 7; see also Hutchinson Dep. at 60; Greene Dep.at 7; Skala Dep. at 18).

Second, the VA claims that Holman's application indicated that he had more relevant work experience than Hutchinson. In his deposition, Greene testified that Holman's application indicated that "he ha[d] been in in the security forces and security career field since July of 2000 and was performing the job of Installation Security Program Manager at the time of his selection, so that equated to almost ten years' experience." (Greene Dep.at 5, 14–21). Hutchinson's application, on the other hand, reflected that she had only two years of experience in the security field, which spanned from 2005 through 2007. (See id. at 5; see also Skala Dep. at 23–24; EEO Hearing Tr. Part II, at 5–6; Hutchinson Dep. at 67).

Third, the VA asserts that Holman's personnel security experience appeared to be at a higher supervisory level than Hutchinson's experience. For instance, Holman's resume indicated that in his role as an Installation Security Program Manager, he oversaw fourteen Unit Security Managers, whom he "assisted in program oversight, as well as conducting and processing security investigations." (Ex. H to Mot. Summ. J., at 2). In addition, Holman's application stated that:

> [he] maintain[ed] accounts in EQIP by Design through the Office of Personnel Management's Portal site, JPAS (Joint Personnel Adjudication System) Account Manager, as well as CASPR (Central Adjudication Security Personnel Repository). These databases [were] utilized to initiate, review, verify, and track all security clearances assigned to the Airlift Wing. [Holman] manage[d] and process[ed] all security clearances within the [W]ing that are initial or periodic reinvestigations.

(Id. at 4–5).

In contrast, Hutchinson's resume was ambiguous. It specified that Hutchinson had served as a Personnel Security Manager from 2005 through 2007, but it also stated that she was an "Assistant Security Officer" and that she "assist[ed] personnel in transitioning from the SF86-Security Clearance Questionnaire." (See Ex. B to Mot. For Summ. J. at 8; see also Skala Dep. at 19–20). The lack of clarity in Hutchinson's resume made Greene and Skala question the level of Hutchinson's two years of work experience in the security field. (See Greene Dep. at 13–14, 18; see also Skala Dep. at 18, 20).

The VA has met its "exceedingly light" burden of articulating a legitimate, non-discriminatory reason for hiring Holman instead of Hutchinson. Therefore, the presumption of discrimination created by Hutchinson's initial evidence is dispelled, and in order to survive summary judgment, Hutchinson must present evidence creating a genuine issue of material fact as to whether the reasons proffered by the VA are mere pretext for discrimination.

A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. Provided that the proffered reason is one that might motivate a reasonable employer, the plaintiff cannot succeed in demonstrating pretext "by simply quarreling with the wisdom" of the employer's reason or substituting her own business judgment for that of the employer. See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir.2000). Instead, the plaintiff "must meet [the employer's] reason head on and rebut it." Id. A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

In determining whether the plaintiff has created an issue as to pretext, the Court may not act as a super-personnel department and reexamine the employer's decisions; rather, the Court must limit its inquiry to "whether the employer gave an honest explanation of its behavior." Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). "The inquiry into pretext requires the Court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the [employer]'s proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008) (citation omitted).

Relying on Morrison v. Booth, 763 F.2d 1366, 1374 (11th Cir. 1985), in which the Eleventh Circuit held that departures from normal procedures may be suggestive of discrimination, Hutchinson first argues that an inference of pretext can be drawn from the VA's purported violation of its own policy, a bargaining agreement, and federal law. (Doc. 28 at 9–10, 14). As support for her argument, Hutchinson cites an excerpt from the VA's 2008 Medical Center Policy, which provides that "[i]f interviews are conducted, all applicants referred on any one certificate will be interviewed if any one applicant on the same certificate is interviewed." (Doc. 28-7). She also cites a provision in the VA's Master Agreement with the American Federation of Government Employees that states, in pertinent part:

> If interviews are used, they must be job related, reasonably consistent and fair to all candidates. Also, if interviews are used, all candidates must be interviewed if reasonably available, in person or by telephone where circumstances warrant. If more than one Department official is conducting interviews, a union representative may be present upon the employee's request.

(Doc. 28-6). Hutchinson then summarily concludes that the VA violated its 2008 Medical Center Policy and the Master Agreement because it did not grant her an interview for the Personnel Security Specialist position. (Doc. 28 at 9).

In support of her argument that the VA violated federal law, Hutchinson cites 5 U.S.C. § 3318(c), which provides, in relevant part, that:

> (1) If an appointing authority proposes to pass over a preference eligible on a certificate in order to select an individual who is not a preference eligible, such authority shall file written reasons with the [Office of Personnel Management ("OPM")] for passing over the preference eligible. The Office shall determine the sufficiency or insufficiency of the reasons submitted by the appointing authority, taking into account any response received from the preference eligible under paragraph (2) of this subsection. When the [OPM] has completed its review of the proposed passover, it shall send its findings to the appointing authority and to the preference eligible. The appointing authority shall comply with the findings of the [OPM].

> (2) In the case of a preference eligible described in section 2108(3)(C) of this title who has a compensable service-connected disability of [thirty] percent or more, the appointing authority shall at the same time it notifies the [OPM] under paragraph (1) of this subsection, notify the preference eligible of the proposed passover, of the reasons therefor, and of his right to respond to such reasons to the Office within [fifteen] days of the date of such notification.

5 U.S.C. § 3318(c)(1), (2).

Hutchinson then concludes that the VA violated § 3318(c) by failing to provide OPM with notice of its intent to pass her over for the position and by failing to make her aware of her right to rebut the VA's reasons for passing her over. (Doc. 28 at 10). The Court is unpersuaded.

Despite Hutchinson's argument, there is simply no evidence in the record showing that the VA violated the procedures set forth in the VA's 2008 Policy, its Master Agreement,

or 5 U.S.C. § 3318(c). For starters, Hutchinson points to no evidence showing that the VA's 2008 policy was in effect at the time of the hiring process in 2010. But even assuming the policy was in effect, Hutchinson's argument still fails because she supplies the Court with no evidence demonstrating she was listed on the same certificate as the three interviewees. In fact, aside from Holman, Hutchinson does not even provide the names of the others who received an interview. At best, Hutchinson has shown that her name appeared on three Certificates for applicants eligible for veterans' preference. But, there is no indication that the VA used either of those Certificates to select the three interviewees.

As with the VA's 2008 Policy, Hutchinson also failed to present evidence that the VA's Master Agreement was in effect at the time of the hiring process. And even assuming that the Master Agreement was in effect at that time, there is no indication that its interviewing procedures applied to the Personnel Security Specialist position or that the VA violated those procedures.

Hutchinson's argument that the VA violated 5 U.S.C. § 3318(c) does not fare any better because there is no indication that the VA passed her over to select a non-preference eligible individual. In fact, Hutchinson's argument is belied by her own evidence, which indicates that Holman also qualified for veterans' preference. (See Ex. 9 to Doc. 28, at 1; see also Ex. 10 to Doc. 28). And even if the VA did pass Hutchinson over for a non-preference eligible individual, she provides no proof that the VA failed to comply with the procedures set forth in § 3318(c)(1) and (2).

Even assuming, however, that the VA did violate the procedures discussed *supra*, those violations, standing alone, do not tend to show that the VA was motivated by discriminatory animus because Hutchinson has failed to present evidence that

discrimination played a role in any procedural irregularities. See Mitchell v. USBI Co., 186 F.3d 1352, 1355–56 (11th Cir.1999) (citing EEOC v. Tex. Instruments, Inc., 100 F.3d 1173, 1182 (5th Cir.1996), for the position that "deviation from company policy [is] not evidence of discrimination, absent a nexus between deviation and employee's protected status"); see, e.g., Gibbs v. Consol. Edison Co., 714 F. Supp. 85, 92 (S.D.N.Y. 1989) ("[A] contract violation standing alone does not indicate racial animus, motive or intent."). Thus, Hutchinson fails to raise a triable issue as to pretext on this basis.

As her second theory of pretext, Hutchinson argues that the VA provided inconsistent reasons for deciding not to promote her because the VA initially told Hutchinson "that her name was not on the same certification list that [Holman] was on." (Doc. 28 at 11). However, Hutchinson does not cite, and the Court cannot find, any evidence that the VA told Hutchinson that her name was not on the same certification list as Holman. Even if such evidence does exist, Hutchinson fails to explain how it conflicts with any of the three legitimate reasons the VA gave for deciding to promote Holman instead of her. As such, Hutchinson fails to present an issue as to pretext on this basis as well.

The gravamen of Hutchinson's next pretext argument is that she was more qualified for the Personnel Security Specialist position than Holman. However, in a failure-to-promote case, a plaintiff cannot establish pretext simply by showing that she is more qualified for the position she coveted. See Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000). The burden is on the plaintiff to establish that he or she was "substantially more qualified than the person promoted." Id. at 1255. Specifically, the plaintiff must adduce evidence showing that the disparities between her qualifications and the selectee were "of

such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Brooks v. Cty. Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Cooper v. S. Co., 390 F.3d 695, 732 (11th Cir. 2004).

Hutchinson claims that she was substantially more qualified for the Personnel Security Specialist position than Holman because she had over ten years of relevant experience, while Holman only had two. (EEO Hearing Tr. Part. I, at 7–9). Hutchinson also touts her Master's degree in Organizational Management in comparison to Holman's Associate's degree in Criminal Justice. (Id. at 8–9). However, no reasonable fact-finder could conclude from the evidence before the Court that Hutchinson was more qualified for the position than Holman.

As an initial matter, Hutchinson's contention that she had more than ten years of related work experience at the time of her application is irrelevant to the Court's pretext analysis because there was nothing in her application indicating that she had more than ten years of relevant work experience. (EEO Hearing Tr. Part I, at 5–6; Hutchinson Dep. at 67). Indeed, Greene testified, and Hutchinson acknowledged, that her resume indicated that she had only two years of relevant work experience. (See Greene Dep. at 5; see also EEO Hearing Tr. Part II, at 5–6). Therefore, Hutchinson's assertion that she had more years of related experience than Holman is completely belied by the record.

Furthermore, while it is true that Hutchinson held an advanced degree, her level of education does not establish that she was better qualified for the Personnel Security Specialist position than Holman. The vacancy did not require an advanced degree. In fact, it had no minimum education requirement. Instead, the vacancy announcement required

that applicants have experience doing "progressively responsible intelligence-related security work" and "technical competence in automated information systems." (Ex. C to Mot. Summ. J., at 3). Therefore, the fact that Hutchinson held a master's degree while Holman held only an associate's degree is largely irrelevant to the determination of whether she was substantially more qualified for the position than Holman. To the extent that Hutchinson believes a master's degree should have been a qualification, or that the hiring panel should have given greater weight to the fact that she held such a degree, Hutchinson merely seeks to substitute her own business judgment for that of the VA, which is improper. See Chapman, 229 F.3d at 1030 (explaining that an employee may not establishing pretext by substituting his business judgment for that of the employer).

In a further attempt to show that she was more qualified for the position, Hutchinson suggests that the hiring panel misinterpreted the level and extent of Holman's experience. Specifically, Hutchinson asserts that Greene "overstated" Holman's level of relevant experience" by erroneously concluding that "[Holman] had ten years of personnel experience" because, in her opinion, Holman's experience did not "pertain to personnel security" but to "military police type security." (See Doc. 28 at 12; see also EEO Hearing Tr. Part II, at 7). Hutchinson also claims that Skala erroneously concluded that Holman "was involved in an analytical sense with the processing of security clearances" because "nothing in [Holman's] resume or application expressly stated this." (Doc. 28 at 11).

In making these arguments Hutchinson merely quarrels with the wisdom of the hiring panel, which is insufficient to create an issue as to pretext. "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision-maker's head." Alvarez v. Royal Atl. Developers, Inc.,

610 F.3d 1253, 1265 (11th Cir. 2010). Thus, the question is not whether Holman actually had experience processing security clearances or ten years of related experience; the question is whether the hiring panel believed (even mistakenly)[6] that Holman did. While Hutchinson makes abundantly clear her disagreement with the hiring panel's assessment of Holman's resume, she has not presented evidence tending to show that the hiring panel did not honestly believe that Holman was the more qualified candidate for the position.

Even assuming that Hutchinson was, in actuality, the superior candidate, she has not presented evidence that the disparities between Holman and her own qualifications were of such weight and significance that no reasonable person could have chosen Holman instead of her. Thus, Hutchinson cannot survive summary judgment on this basis.

In sum, Hutchinson has not supplied the Court with evidence tending to show that the nondiscriminatory, legitimate reasons proffered by the VA are unworthy of credence. Nor has she presented evidence creating an issue as to whether race or gender motivated the VA's decision not to promote her. In fact, Hutchinson acknowledges that she did not know anyone from the hiring panel and that she was not aware of any derogatory statements concerning her race or gender made by anyone on the panel. (Hutchinson Dep. at 75–76, 91). Furthermore, there is no evidence to suggest that anyone on the hiring panel knew of Hutchinson's or Holman's race prior to making their decision. Therefore, on this record, no reasonable jury could find that the VA's proffered legitimate nondiscriminatory reasons were pretextual. Accordingly, Hutchinson's claim fails as a matter of law under the McDonnell Douglas framework.

---

[6] Eubanks v. Henry Cty., 626 F. App'x 250, 256 (11th Cir. 2015) (explaining that an employer's mistaken beliefs about "an [applicant's] qualifications does not demonstrate pretext") (citing Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001)).

Perhaps realizing that her claims would not survive under a McDonnell Douglas analysis, Hutchinson argues in her response that her failure-to-promote claim survives summary judgment under the mosaic test advanced in Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1320 (11th Cir. 2012), in which the Eleventh Circuit noted that a plaintiff can survive summary judgment if she presents "presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination." Id. (quoting Smith v. Lockheed–Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)). As her "mosaic", Hutchinson relies on the same circumstantial evidence she proffered for her pretext arguments. (See Doc. 28 at 14). Hutchinson also urges the Court to "take special note" of the VA's interviewing decisions—namely, its decision not to interview two African Americans[7] and to interview only three white males. (Id. at 13, 14).

But, for the same reasons that Hutchinson's pretext evidence fails to establish a triable issue under the McDonnell Douglas analysis, it is equally insufficient to create a convincing mosaic of circumstantial evidence from which the jury could infer discrimination. Furthermore, the VA's interviewing decisions are hardly probative of discrimination because Hutchinson did not present evidence regarding the racial and gender composition of the twenty-nine qualified applicants. Nor has she provided evidence regarding the qualifications of each applicant. Absent such information, no juror could reasonably infer that discrimination motivated the VA's decision not to promote Hutchinson. Accordingly,

---

[7] Presumably Hutchinson is referring to herself and Brown as the *two* African Americans who were not selected for an interview. However, setting aside the assertions in Hutchinson's response, there is no evidence showing that Brown is African-American. Similarly, there is no evidence in the record showing that all three male interviewees were white.

summary judgment is due to be granted in favor of the VA on Hutchinson's claims for race and gender discrimination.

## IV.    Conclusion

It is **ORDERED** and **ADJUDGED** as follows:

1.    The Department of Veteran Affairs Agency's Motion for Summary Judgment (Doc. 27) is **GRANTED** as to Hutchinson's claims of discrimination.

2.    The Clerk is directed to enter a judgment providing that Plaintiff, Eyvette Hutchinson, takes nothing on any of her claims against Defendant Secretary, Department of Veteran Affairs Agency. Thereafter, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida, on January 10, 2018.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record